## LASSEROT v. GAMBLE.

### S. F. No. 483; October 15, 1896.

#### 46 Pac. 917.

**Forcible Detainer—What Constitutes.—A Lease Provided That on Failure** of the lessee to perform certain covenants the lessor might recover possession without notice or demand. After the lessee had been in peaceable possession for several months, the lessor, claiming a violation of the lessee's covenants, ordered him to leave the premises, but did not give the written notice required by Code of Civil Procedure, sections 1161, 1162. On the lessee's refusal to leave, the lessor had him arrested on a warrant charging a public offense, and during his absence took possession, without the consent of the employee in charge, and refused to surrender possession to the lessee for more than five days after demand therefor. Code of Civil Procedure, section 1160, provides that a person who, during the absence of the occupant, unlawfully enters on real property which for more than five days prior thereto has been in the peaceable possession of such occupant, and refuses to surrender for five days after demand therefor, is guilty of forcible detainer. Held, that defendant was liable under said act.[1]

**Forcible Detainer—Evidence.—In an Action Against said lessor** by the lessee for forcible detainer it was competent to show that plaintiff was arrested at defendant's instance, for the purpose of getting him away from the premises, so that defendant might enter and take possession thereof.

**Forcible Detainer — Evidence.—In Forcible Detainer,** under Code of Civil Procedure, section 1160, evidence of title in defendant is inadmissible.

APPEAL from Superior Court, Santa Cruz County; J. H. Logan, Judge.

---

[1] Cited in the note in 121 Am. St. Rep. 378, 400, 405, on the right to a civil action for forcible entry and detainer.

Action by Peter Lasserot against A. W. Gamble for the forcible detention of certain lands. From a judgment for defendant and from an order refusing a new trial plaintiff appeals. Reversed.

Charles B. Younger and Spalsbury & Burke for appellant; W. D. Storey for respondent.

BELCHER, C.—This is an appeal from a judgment and order refusing a new trial. No brief has been filed on behalf of the respondent. The action is for the forcible detention of certain lands and premises in Santa Cruz county known as the "Gamble Place." The complaint alleges that on the first day of December, 1893, the plaintiff was in the actual, peaceable and undisturbed possession of the said lands and premises, and that, while plaintiff was in such possession, and during his absence from said premises, the defendant, on the day named, unlawfully, and against plaintiff's will, and without his consent, entered upon said premises, and ousted and ejected plaintiff therefrom, and ever since unlawfully, wrongfully, forcibly and against plaintiff's will has held, and still holds, possession of the same; that on the thirtieth day of January, 1894, and before the commencement of this action, plaintiff made demand of defendant that he forthwith surrender the said premises and the possession thereof to plaintiff, but defendant, for more than five days after said demand, refused, and still refuses, to surrender the same. The complaint also states that on December 1, 1893, plaintiff was in possession of certain personal property on the said premises, which was then and there and theretofore used by him in the cultivation, farming and use thereof, and that defendant then and there wrongfully and unlawfully seized and took possession of all of said personal property, and converted the same to his own use, to the plaintiff's damage, etc. The answer denies that on the first day of December, 1893, plaintiff was in the peaceable or undisturbed possession of the said real property or of the said personal property, with certain specified exceptions, and alleges that all of said real property and all of said personal property, omitting the excepted articles, was the property of defendant on said day, and that he was then entitled to the possession thereof. The answer further al-

leges that defendant took possession of all of said property, excepting the said enumerated articles, rightfully and in accordance with the consent and agreement of plaintiff theretofore expressed and entered into by him, and denies that plaintiff has been damaged in any sum whatever by being deprived of said real or personal property. The answer then sets out a lease of the said premises alleged to have been executed by defendant to plaintiff on the twenty-eighth day of June, 1893, for the term of three years and four months, commencing on the first day of July, 1893, and ending on the first day of November, 1896. The lease provides that: "The party of the second part is to stock said ranch with the seven cows and six calves now on said ranch, and the party of the first part is to furnish an equal number of cows, or others of equal value, on or before the first day of December next. Each of the parties are to furnish half of the necessary seed and feed and half of the hogs necessary to consume the grain or other products of said ranch, and each is to pay half the cost of repairing the agricultural implements used on said ranch. The party of the first part is to furnish materials for making and keeping the necessary fences in repair. The party of the second part agrees to furnish labor and work said ranch and dairy well, and to make and keep the necessary fences in good repair during the continuance of this lease; to market and dispose of such of the products of the dairy and ranch as both of the parties may from time to time agree to; to keep a full and correct account of such sales, yielding to the party of the first part a correct copy thereof, and paying him one-half of the proceeds thereof on the first day of each and every month during the continuance of this lease; and as compensation for the crop now on said ranch the party of the second part agrees to pay to the party of the first part, on or before the first day of November next, the sum of $400 out of the proceeds of the sales of the hogs or other products of said ranch, such amount being in excess of the half due said party of the first part. . . . . And the said party of the second part covenants with the said party of the first part that if, at any time during the continuance of this lease, he should fail or refuse to comply with the covenants herein made by him, or in any part thereof, this lease shall at once become void, and the party of the first part may

recover possession as if the same was withheld by forcible detainer; the party of the second part hereby waiving the right of any notice or demand for the possession of said premises." After setting out the lease, the answer alleges: "That plaintiff, before December 1, 1893, utterly failed and neglected to perform and comply with the covenants on his part to be performed under said agreement, and willfully and grossly violated said covenants." It then states how plaintiff failed to comply with the conditions of the lease in several respects; that by reason of his said acts of neglect and his violation of said covenants defendant had been damaged in the sum of $1,000; and that, after the violations of plaintiff's covenants, and on or about December 1, 1893, defendant notified plaintiff that said agreement was void, and thereupon took peaceable possession of said farm and the said personal property. The case was tried before a jury, and the verdict and judgment entered thereon were in favor of the defendant.

The statement contains numerous specifications of the particulars in which it is claimed the evidence was insufficient to justify the verdict, and also many specifications of errors in law occurring at the trial, and excepted to by the plaintiff; but most of these specifications need not be considered. It is alleged in the complaint, and not denied by the answer, that plaintiff was in the actual possession of the property when the defendant entered upon the same, and took possession thereof. It is also alleged, and not denied, that plaintiff afterward demanded of defendant that he forthwith surrender to plaintiff the possession of the said property, and that defendant, for more than five days after said demand, refused, and ever since has refused, and still refuses, to surrender the same.

The circumstances under which defendant took possession of the property were shown to be as follows: Plaintiff testified: "I went there about June 1, 1893, and took possession of the place at that time. I had two men—John Lovely and Richard Lair—working for me. On or about November 29, 1893, I went to Pescadero, and got provisions for the ranch, and returned to the ranch with the provisions. Defendant was at the ranch when I returned. We had supper, and the constable came after supper, and defendant

33

wanted to know if I would leave the place. I said I would not. The constable then arrested me, and required me to go to Justice Craghill's court at Santa Cruz, about twenty miles distant. I gave bond on Saturday evening, but on Sunday one of my bondsmen withdrew from the bond, and I was committed to the county jail in Santa Cruz, and was confined there continuously for fifty-seven days. When I left the premises described in the complaint, I left Lovely in charge of them. I told Lovely, in case I did not come back, to keep possession, and not let anybody have possession of the place. I was in possession of the place. I had peaceable and undisturbed possession of the place up to the time I was arrested by the constable as stated above.'' And John Lovely testified: ''I was at the ranch when defendant came and took possession. Plaintiff was then in jail in Santa Cruz. Defendant came to the ranch after plaintiff was taken to jail, and defendant said to me: 'Frenchie, I want to get in the house to take out some of my things.' I opened the door, and defendant went in. After defendant got in, he said to me: 'You give me possession, and I will give you some money.' Defendant then took down the stovepipe, and asked me to help him move the stove; but I said I would not. I told defendant that I would not give possession to him, or to any other man. Defendant took the dishes and the stove out of plaintiff's room. Defendant then went out, and after a while I thought he was gone, and I went out, and he came back, and fastened the door. I did not give defendant permission to take possession. He took it without my consent. I could not get back in the house. I had nothing to eat. Plaintiff had put me in charge of the place, and told me to take care of it, and not to allow anybody to get possession of it. I had to go away to get something to eat, and defendant would not let me in again. . . . . When plaintiff went away, he left me plenty of provisions. After defendant took possession of the place, he threatened to have me arrested if I broke into the house.'' The plaintiff sought to prove that he was arrested at the instance of the defendant, and to that end he asked defendant, when on the stand as a witness: ''Was plaintiff arrested at your instigation?'' And again: ''Did you not cause plaintiff to be arrested in order to get him off the place?'' Both questions were objected

to by defendant, though upon what ground does not appear, and the objections were sustained. Afterward plaintiff offered in evidence the complaint on which the warrant for his arrest was issued, but upon like objection it was also excluded. A copy of the complaint is set out, from which it appears that it charged the plaintiff with a public offense, and was sworn to by defendant on December 1, 1893. The obvious purpose of this offered evidence was to show that the arrest of plaintiff was a means resorted to to get him away from the place in order that defendant might enter upon and take possession of it, and for that purpose it was competent, and should have been admitted. It is clear that defendant had no right to take possession of the premises as he did, and in doing so he was guilty of a forcible detainer: Code Civ. Proc., sec. 1160, subd. 2. "Under our statute, evidence of title in actions of forcible detainer is inadmissible. 'The inquiry in such cases is confined to the actual peaceable possession of the plaintiff, and the unlawful or forcible ouster or detention by the defendants; the object of the law being to prevent the disturbance of the public peace by the forcible assertion of a private right. Questions of title or right of possession cannot arise. A forcible entry upon the actual possession of plaintiff being proven, he would be entitled to restitution, though the fee simple title and present right of possession are shown to be in defendant': McCauley v. Weller, 12 Cal. 524. 'Under the code, all entries on the actual possession of another are unlawful, and the question of good or bad faith on the part of the defendant no longer affects the right of the recovery in this form of action': Voll v. Hollis, 60 Cal. 575''; Giddings v. Water Co., 83 Cal. 100, 23 Pac. 198.

The court properly instructed the jury that it did not require the actual personal presence of plaintiff upon the premises to constitute actual possession in him. If his employee was in possession at the time of defendant's entry, his possession was the possession of plaintiff. The court further instructed the jury that the defendant could not lawfully take possession of the premises described in the complaint against the will or consent of plaintiff, unless he had given plaintiff three days' notice in writing, as provided in sections 1161, 1162 of the Code of Civil Procedure. Under these circumstances the verdict should have been for

the plaintiff, and the judgment and order appealed from should be reversed and the cause remanded.

We concur: Searls, C.; Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and the cause remanded.